**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SEHIN DEGEFU,**<br>**6101 Flemington Court**<br>**Capitol Heights, MD 20743**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES DEPARTMENT OF**<br>**VETERANS AFFAIRS,**<br>**810 Vermont Ave., NW**<br>**Washington, DC 20420; and**<br><br>**ROBERT WILKIE in his official capacity as the**<br>**Secretary of the United States**<br>**Department of Veterans Affairs**<br><br>**Defendants.** | **Civil Action No. 20-3548** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff Sehin Degefu, by her undersigned attorney, brings this action for relief and damages based on the denial of her rights under Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., to remedy acts of employment discrimination and retaliation perpetrated against her by the United States Department of Veterans Affairs (VA).

2.      Plaintiff contends that VA officials discriminated against her because of her disability, retaliated against her for requesting reasonable accommodation, retaliated against her for engaging in protected EEO activity, and created a hostile working environment.

### JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343, 42 U.S.C. § 2000e-5, 29 U.S.C. § 791, *et seq.*

4.      Venue is appropriate in this Court under 28 U.S.C. § 1391.

**PARTIES**

5.      Plaintiff Sehin Degefu, a female, is a citizen of the United States and a resident of the State of

Maryland. At all times relevant to this suit, she was employed with the VA as a Pharmacist. Plaintiff resides

at: 6101 Flemington Court, Capitol Heights, MD 20743.

6.      Defendant Robert Wilkie is the Secretary of the Department of Veterans Affairs. The Secretary is

being sued in his official capacity as provided by law based on his executive responsibility for administering

VA personnel policies and his responsibility to enforce and to promote equal employment opportunity

throughout the VA. During the relevant time period, the VA employed well-over 500 employees.

Defendant's address is: Secretary of Veterans Affairs, U.S. Department of Veterans Affairs, 810 Vermont

Ave., NW, Washington, DC 20420.

7.      Mr. Tamiru Adisu is not a defendant in this lawsuit but was named in Plaintiff's Equal Employment

Opportunity Commission (EEOC) complaint as a discriminating official. Mr. Adisu was Plaintiff's first-line

supervisor.

8.      Mr. Linwood Moore is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint

as a discriminating official. Mr. Moore was Plaintiff's second-line supervisor.

9.      Dr. Terrill Washington is not a defendant in this lawsuit but was named in Plaintiff's EEOC

complaint as a discriminating official. Dr. Washington was Plaintiff's third-line supervisor.

**STATEMENT OF FACTS**

10.      Plaintiff was hired at the Washington DC VA Medical Center (DC VAMC)

Pharmacy Service Unit on or about January 22, 2008. She worked as a Pharmacist in the

Outpatient Section.

11.      From 2008 onwards, until she engaged in protected activity, Plaintiff received

outstanding performance appraisals. She had no disciplinary action.

12.      In 2009, Plaintiff was diagnosed with Raynaud's Disease. Raynaud's Disease is a disorder of the blood vessels, usually in the fingers and toes. It causes the blood vessels to narrow when the person is cold or feeling stressed. When this happens, blood cannot get to the surface of the skin and the affected areas turn white and blue.  When the blood flow returns, the skin turns red and throbs or tingles. In severe cases, loss of blood flow can cause sores or tissue death.

13.      Plaintiff was diagnosed with a permanent disability in 2009.

14.      In March 2012, Plaintiff requested reasonable accommodation from Defendant. She asked Defendant to allow her to work in a warm environment and use a heater to accommodate her Raynaud's disease.

15.      Plaintiff provided medical documentation to Defendant to support her request for reasonable accommodation.

16.      On March 9, 2012, Plaintiff contacted Defendant's EEO Office and alleged that she was being harassed by Mr. Adisu.

17.      Mr. Adisu became aware of Plaintiff's disability, accommodation request, and protected EEO activity in March 2012.

18.      On April 30, 2012, Mr. Adisu verbally abused Plaintiff.  He behaved in a loud, harassing, and unprofessional manner towards Plaintiff in the presence of patients.

19.      On May 11, 2012, Anslem Beach, Chief of EEO and Diversity Programs, sent Plaintiff a letter stating that Defendant received her medical documents and reasonable accommodation request. In the letter, Mr. Beach stated that Plaintiff met the definition of a person with a disability.

20.       Defendant's EEO office set up a meeting with Plaintiff and Mr. Adisu, which took place on May 12, 2012. Those present at the meeting were Plaintiff, Mr. Moore, Mr. Adisu, and Eli Salahuddin, the EEO Program Manager.

21.      On May 12, 2012, Plaintiff told Mr. Moore, Mr. Adisu, and Eli Salahuddin that Mr. Adisu was harassing her because of her disability and accommodation request. She told them she was being retaliated

3

against for meeting with the EEO Officer on March 9, 2012 and for requesting accommodation.

22.     After the May 11, 2012 meeting, Mr. Adisu continued to harass Plaintiff. On May 23, 2012, Mr. Adisu spoke to her in an unprofessional manner (in the presence of patients), pressured her, and sabotaged her work efforts.

23.     On July 11, 2012, Mr. Adisu treated Plaintiff in an unprofessional manner in the presence of patients. He shouted at her and accused her of throwing work on the desk.

24.     On or about August 14, 2012, Mr. Adisu displayed anger towards Plaintiff when he accused her of insubordination and disrespect, accused her of being AWOL, and threatened disciplinary action during a meeting.

25.     On August 30, 2012, Mr. Adisu accused Plaintiff of a work error (failure to call a patient's prescription number) in the presence of co-worker Ayne Adenew.

26.     On September 3, 2012, Defendant informed Plaintiff that she would be transferred from Pharmacy Service to the Primary Care Clinic.

27.     During the month of September 2012, Plaintiff received harassing e-mails from Mr. Adisu, even though he was told not to contact Plaintiff.

28.     Mr. Adisu inappropriately questioned when Plaintiff reported for work, asked her when she went to the restroom, and informed her of changes in her work assignments.

29.     On November 17, 2012, Plaintiff's FY 2012 performance appraisal contained a negative narrative for a critical element, which contributed towards a rating of "excellent" versus "outstanding." Prior to engaging in protected EEO activity and prior to requesting reasonable accommodation, Plaintiff did not receive negative comments in her performance appraisals and did not receive less than "outstanding" ratings.

30.     Although Plaintiff was removed from Mr. Adisu's chain of command, Mr. Adisu had no reason to contact Plaintiff, he did not leave her alone.

31.     On November 29, 2012, Plaintiff contacted Defendant's  EEO office and initiated an EEO complaint against Mr. Adisu. She alleged that he harassed her because of her accommodation request and disability.

32.     Dr. Babatunde K. Osun, a Clinical Pharmacist at Washington DC VA Medical Center, told Mr. Linwood Moore, Plaintiff's second-line supervisor, that Mr. Adisu was harassing Plaintiff.

33.     Mr. Babatunde Alebeleye, a co-worker, also complained about Mr. Adisu's treatment of Plaintiff.  Mr. Alebeley stated in a letter that:

> On January 16th 2013, I accompanied  Mrs. Degefu to a meeting with Larry Williams (HR/LR supervisor) and Dr. Washington (Chief of Pharmacy).At that meeting Mrs. Degefu expressed concern about Mr. Adisu continuing to harass her even though he is no longer her supervisor and she has been moved to a different work place. Mr. Williams told Mrs. Degefu she should feel comfortable at her new work place in the primary care clinic. He stated, "I will sit down with Mr. Adisu and tell him to stay away from you." Mr. Adisu will be told  not to come to the Green Team Primary Care clinic, and Dr. Washington (Chief of Pharmacy)concurred.

34     On March 4, 2013, Plaintiff filed a formal EEO complaint (Agency Case No. 2004-0688-2013100772). Plaintiff alleged that she was subjected to a hostile work environment based on reprisal for her March 9, 2012 contact with the EEO Program Manager and for requesting a reasonable accommodation when:

1) On April 30, 2012, Tamiru Adisu, Outpatient Supervisor, behaved in a loud and unprofessional manner towards Plaintiff (during a work discussion in the presence of patients), wherein he allegedly stated disagreement with Plaintiff's attitude and body language;

2) On May 23, 2012, Mr. Adisu spoke to Plaintiff in an unprofessional manner (in the presence of patients), when he pressured her and sabotaged her work efforts regarding prescriptions that required corrective action;

3) On July 11, 2012, Mr. Adisu treated Plaintiff in an unprofessional manner (in the presence of patients) when he shouted at her and accused her of throwing work on the desk;

4) Approximately on August 14, 2012, Mr. Adisu displayed anger towards Plaintiff when he sent several emails that implied her absence from her assigned workplace, accused her of insubordination and disrespect, and informed her she would be "written up" during a meeting;

5) On August 30, 2012, Mr. Adisu accused Plaintiff of a work error (failure to call a patient's prescription number) in the presence of a co-worker;

6) On September 3, 2012, management informed Plaintiff of her pending transfer from Pharmacy Service to the Primary Care Clinic, and directed Mr. Adisu not to have further contact with Plaintiff;

7) During the month of September 2012, Plaintiff received harassing e-mails from Mr. Adisu wherein he inquired about the time she reported for work, when she went to the restroom, and changes in her work assignments; and

8) On November 17, 2012, Plaintiff's FY 2012 performance appraisal contained a negative narrative for a critical element which contributed towards a rating of excellent versus outstanding as anticipated.

35.     On July 15, 2014, Mr. Adisu came into Plaintiff's work area, stood at the door, and stared at her in a menacing manner. Plaintiff's co-worker, Connie Wheadon testified that Mr. Adisu was "lurking" in the hallway near Plaintiff "where he shouldn't have been."

36.     On July 15, 2014, Mr.  callously stated, "l don't care!" after Plaintiff reported Mr. Adisu's continued harassment. He refused to take corrective action.

37.     On August 8, 2014, August 20, 2014, September 9, 2014, September 12, 2014, September 25, 2014, and December 22, 2014, Plaintiff formally requested accommodation and asked Defendant to ensure that she did not have to work any night shifts due to her disability.

38.     On September 4, 2014, Mr. Moore assigned Plaintiff to the evening shift against her will, which required her to work in the I.V. room, which was very cold.  Mr. Moore was aware that Plaintiff had Raynaud's disease and knew it impacted her ability to handle cold environments, but he nevertheless put her in the cold environment.

39.     Plaintiff requested reasonable accommodation from Defendant and requested that she be returned to her day shift schedule and not be forced to work in the I.V. room.

40.     On September 9, 2014, Defendant was notified that Plaintiff was suicidal.

41.     On September 24, 2014, Defendant denied Plaintiff's reasonable accommodation request to return day shifts on weekdays and Saturdays.

42.     On September 24, 2014, Plaintiff attempted suicide and was hospitalized for a month.

43.     Plaintiff's treating physician, Dr. Adam Lowry, testified at an EEOC hearing that Plaintiff

attempted suicide because she was harassed, retaliated against, and mistreated by Defendant.

44.     On October 22, 2014, Plaintiff filed a second EEO complaint (Agency Case No. 2004-0688-

2014104754).  The accepted claims were whether Plaintiff was subjected to a hostile work environment on

the bases of reprisal (for prior EEO activity Agency Case Number 2004-0688-2013100772), and disability

(mental and physical) when:

1) On July 15, 2014, when Plaintiff reported to Linwood Moore, Associate Chief of Pharmacy, an
employee (who she alleged harassed her in her previous work area) standing in front of her door,
staring at her, and then loitering in the patient care area, Moore responded, "l don't care!" and
failed to take corrective action;

2) On September 4, 2014, Plaintiff learned that she was being assigned to the inpatient evening shift
that would require her to work in the I.V. room that is very cold and would aggravate her medical
condition; and

3) On September 24, 2014, Plaintiff's reasonable accommodation request to return to the schedule she
had when she was hired, *i.e.* day shifts on weekdays and Saturdays but not on evening shifts or
Sundays, was denied when Moore assigned Plaintiff to work the evening shift.

45.     On January 15, 2015, Dr. Lowry requested that Defendant allow Plaintiff to work on a day shift

to accommodate chronic depression.

46.     On January 27, 2015, Dr. Lowery wrote another letter to Defendant repeating his request for

accommodation.

47.     On February 11, 2015, Dr. Lowry, wrote a letter to the VA requesting reasonable

accommodation for Plaintiff.

48.     Dr. Lowry informed Defendant that Plaintiff's suicide attempt occurred in the midst of a major

depressive episode brought on by significant work stress related to ongoing perceived mistreatment

from management at the VA hospital where she worked. Dr. Lowry requested that Defendant

accommodate Plaintiff's chronic depression by allowing her to work a day shift. He stated:

> Sehin Degefu has been a patient of mine for the treatment of major
> depressive disorder. She has recently been hospitalized for

decompensation in September 2014 and is now in outpatient treatment. She is presently exhibiting good insight into need for treatment and has been compliant with regimen. Her concentration and cognitive abilities are stable and at her baseline level of functioning. However, despite this, she continues to exhibit intermittent depressed mood and anxiety. Due to these symptoms and due to her risk of recurrence of a depressive episode, she requires an absolutely constant sleep schedule and medication regimen. In her regimen, she requires a sedating medication each evening.

Because of these factors, she cannot work and evening or night shift. By the beginning of the day shift, her unwavering sleep requirement has been achieved and sedating effects of her evening medication have abated to allow her to work during this day shift.

Her impairment is major depressive disorder. This condition is a chronic illness for approximately half of patients. Likely due to an imbalance of serotoninergic transmission in her brain, she has suffered from a severe episode with impaired regulation of mood. Once stabilized, she is cognitively intact but remains at significant risk of recurrence if her treatment regimen is not followed. This recurrence could include impairment of mood, energy, interest and concentration. The accommodation of working only day shift is required to prevent such a recurrence. Should this recurrence occur, she would be unable to work due to severely impaired concentration and energy level.

Despite major depressive disorder likely being a chronic illness, she should be able to work at a high level with the proper sleep and medication regimen required to achieve stability.

49.   On June 4, 2015, Dr. Lowry sent Defendant another letter requesting accommodation.  He stated

To Whom It May Concern:

I am writing on behalf of Sehin Degefu, a patient under my care. Ms. Degefu first came under my care in September 2014. At that time, she was hospitalized at the Psychiatric Institute of Washington DC after a suicide attempt. She had no prior history of mental illness, had no significant family history of mental illness and no history of substance abuse. Her suicide attempt occurred in the midst of a major depressive episode brought on by significant work stress related to ongoing perceived mistreatment from management at the VA hospital where she works. She was treated for her depressive disorder with Celexa and was discharged from the hospital. After her discharge, I have continued to treat Ms. Degefu as an outpatient. She has responded well to treatment and has been compliant with her treatment regimen. Her medication has been titrated from 10 mg to 20 mg, and she has tolerated and responded well to this. While there has been no marked depressive recurrence, she has continued to go through significant

work pressures. This has challenged her recovery, but has not affected her functioning as a pharmacist at work.

In a case like this, where a patient develops an initial episode of major depressive episode relatively late in life with no family history, one often finds a specific stressor that serves as a significant precipitant. Indeed, her work conflicts appear to explain this. Indeed, I have witnessed some of the pressures she may suffer in my attempts to assist her return to work. She received an astounding amount of resistance in returning to work despite her desire to do so and assurance of her stability and preserved cognitive functioning. **Further, her only recommended accommodation, to work only in a consistent day shift, met remarkable resistance. These incidents seemed to support her view of being placed in challenging workplace pressures.**

Despite these challenges, she is now stable with a good prognosis. She will continue on medication and treatment to help prevent further recurrences.

Adam Lowry M.D. Associate  Professor
George Washington  School of Medicine

Medical Director, Adult
Services Psychiatric
Institute of Washington
4228 Wisconsin Avenue NW
Washington  DC 20016

## EXHAUSTION OF REMEDIES

50.    Plaintiff exhausted all administrative requirements that apply to the processing of her

complaints, including the filing of complaints with Defendant's EEO office.

## STATEMENT OF CLAIMS

COUNT I: Disability Discrimination in Violation of the Rehabilitation Act.

51.    Plaintiff adopts and incorporates by reference paragraphs 1-50 above. Plaintiff alleges that

Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis

of her disability when Defendant treated her less favorably than non-disabled employees.

52.    A result of Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is

suffering considerable injury, including loss of present and future earnings, loss of employment

opportunities and career advancement and mental distress, embarrassment, humiliation, physical

ailments, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT II: Hostile work environment.

53.     A result of Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering.

54.     Plaintiff adopts and incorporates by reference paragraphs 1-53 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her disability when it subjected her to a continuous pattern of harassment.

55.     Plaintiff adopts and incorporates by reference paragraphs 1-54 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to a pattern of retaliatory harassment after she engaged in protected EEO activity and after she requested reasonable accommodation.

56.     As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical ailments such as heart problems, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT III: Disability Discrimination: failure to provide reasonable accommodation.

57.     Plaintiff adopts and incorporates by reference paragraphs 1-56 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her disability when it denied her reasonable accommodation.

58.      As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical ailments such as heart problems, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT IV: Retaliation.

59.      Plaintiff adopts and incorporates by reference paragraphs 1-58 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, treated her differently from other employees after she informed Defendant that she was disabled and requested reasonable accommodation.

60.      Plaintiff adopts and incorporates by reference paragraphs 1-59 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, treated her differently from other employees after she initiated an informal EEO complaint and participated in the EEO process.

61.      As a result of Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical injury, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorney fees, the costs of this litigation, and accrued interest.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff respectfully requests this Court to:

  A.      Enter judgment for Plaintiff against Defendant;

  B.      Declare that the conduct of Defendant is in violation of the Rehabilitation Act;

  C.      Award Plaintiff compensatory damages for the injuries, pain and suffering, and losses

she suffered in an amount to be proven at trial;

D.        Award Plaintiff medical expenses and other costs;

E.        Award Plaintiff compensatory damages for the injuries, pain and suffering, and losses

she suffered in an amount to be proven at trial;

F.        Order Defendant to pay all reasonable attorney fees, court costs, and expenses incurred by

Plaintiff as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment

interest;

G.        Order Defendant to expunge her record of negative personnel information; and

H.        Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff requests a trial by a jury of her peers as to the claim set forth in this Complaint.

Sehin Degefu
By Counsel

Respectfully submitted,

_s/a Rosemary Dettling_                     December 7, 2020
Rosemary Dettling, Esq.                  Date
DC Bar No. 441483
Federal Employee Legal Services Center
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel. 202-390-4741
Fax. 202-379-9772
_Counsel for Plaintiff_

12